STEPHEN L. PEVAR
American Civil Liberties Union Foundation
2074 Park Street
Hartford, Connecticut 06106
(860) 570-9830

LEA C. COOPER
ISB # 3505
American Civil Liberties Union of Idaho Foundation
P.O. Box 1897
Boise, Idaho 83701
(208) 344-9750 ext. 206

DEAN JOSEPH MILLER
ISB # 1968
Cooperating Attorney, American Civil Liberties
Union of Idaho Foundation
McDevitt & Miller LLP
P.O. Box 2564
Boise, ID 83701
(208) 343-7500

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMANDA DAVIS, et al, | Case No. 1:09-cv-00107-BLW |
| Plaintiffs, | |
| vs. | PLAINTIFFS' MOTION FOR |
| CANYON COUNTY, IDAHO, et al, | PRELIMINARY INJUNCTION |
| Defendants. | |

## INTRODUCTION

On October 20, 2008, the Sheriff of Canyon County, Idaho, Chris Smith, instructed his jail administrator, Captain Craig Hansen, to send a letter to the Board of County Commissioners of Canyon County.  Hansen's letter (attached as Exhibit 1)

contains a fitting explanation of why Plaintiffs are filing the instant motion for

preliminary injunctive relief.  The letter states in relevant part (emphasis added):

> On October 6, 2008, the Dale G. Haile Detention Center was inspected
> by Nick Albers, Executive Director of Idaho Jail Standards for the
> Idaho Sheriff's Association, Dave Sasser from ICRMP, Sheriff Chris
> Smith and Captain Craig Hansen.  In this inspection, several concerns
> were voiced by Mr. Albers and Mr. Sasser concerning the condition of
> the facility.  *The two main concerns were the inmate over population
> and the health conditions of the institution. . . .*
>
> The over population of the Canyon County Jail facilities, combined
> with the 24-hour operation, has brought the condition of the facility in
> regards to safety, health and the need for repair, to a critical point that
> must be addressed now. . . .*[I]t is necessary that a large scale
> renovation of the facility be put into action.  The approach can not be
> to just get by, which appears to be the past standard of operation as
> evidenced by the condition of the facility.*
>
> We must recognize that the Dale G. Haile detention center is in poor
> condition.  Employees, visitors and inmates who are all Canyon County
> Citizens are affected by this.  It is a matter of liability, responsibility,
> accountability and Canyon County pride *that these facility issues be
> immediately corrected.*

Two months later, on December 15, 2008, Sheriff Smith wrote Mr. Albers.  (See

attached, Exhibit 2.)  The Sheriff admitted in his letter that although the county had

begun addressing a few issues, the Jail remained overcrowded ("we have too many

inmates"); the Jail was still unsanitary ("mold . . . continues to be a problem" and the

facility "falls short" in many areas involving prisoner health); the Jail still had plumbing

problems (including "toilets and faucets not functioning properly in the restrooms and

showers"); and the county commissioners had not responded to Captain Hansen's

recommendation that the Jail receive "a large scale renovation," including an upgrade of

the Jail's ventilation system.

Canyon County officials are well aware that their Jail has been overcrowded for more than a decade. (*See* "Canyon County ponders bond," *Idaho Press-Tribune* Nov. 13, 2008, www.idahopress.com/?=true&id=16245).   In 2005, the County Commissioners and Sheriff Smith sought voter approval of a bond to build a new jail--repeatedly informing citizens during the process about the many deficiencies in the present facility-- but the measure fell short of the required two-thirds majority. (*See id.*)

During the time that county officials sought to build a new facility, conditions in the existing Jail continued to deteriorate, as Captain Hansen's letter details.  The ACLU of Idaho was allowed to tour the Jail on October 28, 2008. (*See id.*)  In subsequent press statements, Canyon County officials acknowledged the Jail's many problems and shortcomings. *See, e.g.,* http://www.idahopress.com/news/?print=true&id=16374.  One county commissioner, Defendant Steve Rule, candidly admitted on November 16, 2008: "'There's no way we'll win [if the ACLU files suit] because we're in noncompliance.'" (*See* "Jail faces pressure from groups," *Idaho Press-Tribune,* Nov. 16, 2008, http://www.idahopress.com/news/?print=true&id=16374 at p. 5.)

There are four groups of persons intimately familiar with conditions of confine- ment in the Canyon County Jail: the prisoners who live in the jail, the staff who work there, the administrators who operate it, and the agency--the Idaho Sheriff's Association-- that inspects it.  For years now, all four groups have criticized the numerous conditions of confinement in the Jail that are dangerous and unhealthy, and yet the County has allowed these conditions to persist.

Plaintiffs submit this Rule 65 motion in an effort to promptly abate the most serious of these dangers until such time as the Court, after trial, has an opportunity to examine the full scope of Plaintiffs' claims for relief.  These dangerous conditions are so

hazardous to human life that their continued existence must not be tolerated any longer. These conditions are (1) overcrowding, (2) inadequate ventilation, (3) inadequate sanitation, (4) inadequate plumbing, and (5) inadequate recreation. The Ninth Circuit has repeatedly affirmed the issuance of preliminary injunctions in prisoner cases such as this. *See Mayweathers v. Newland*, 258 F.3d 930 (9th Cir. 2001); *Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984); *Wright v. Enomoto*, 462 F. Supp. 397 (N.D. Cal. 1976) (three-judge court), *aff'd*, 434 U.S. 1052 (1978). *See also Martino v. Carey*, 563 F. Supp. 984, 987 (D. Ore. 1983) (granting prisoners of a county jail preliminary relief to immediately improve unhealthy conditions of confinement, including inadequate ventilation and inadequate recreation).

Plaintiffs have attempted to discuss and resolve these exigent issues with Defendants, to no avail. For instance, Plaintiffs requested information from Defendants as to whether they have conducted any environmental studies to determine just how dangerous these acknowledged unhealthy conditions are, and what measures must be taken to abate them. Defendants refused to supply that information. In addition, Plaintiffs offered to finance environmental tests on an expedited basis. Defendants refused to permit these tests to be conducted. Accordingly, Plaintiffs have no reasonable alternative but to seek preliminary injunctive relief in an effort to protect human life.

## THE PRELIMINARY INJUNCTION STANDARD

Plaintiffs seek preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. The standard for issuing such relief was recently summarized by Judge Lodge in *Balla v. Idaho Board of Correction*, 2006 WL 1793555 (D. Idaho 2006):

A Rule 65 preliminary injunction may be granted if the moving party satisfies one of two tests, designated as the "traditional standard" or the "alternative standard" of law. *International Jensen, Inc. v. Metrosound U.S.A. Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). The traditional standard requires a demonstration of the following elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2) that the moving party will probably prevail on the merits; (3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the alternative standard, the moving party may meet its burden by demonstrating either: (1) a combination of probable success of the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in the movant's favor. *Benda v. Grand Lodge Intern'l Ass'n. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937 (1979).

*Balla*, 2006 WL 1793555 at *2 (internal footnote omitted). *See also Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009) (discussing the same two tests); *Goodrick v. Townsend*, 2006 WL 694644 (D. Idaho 2006) (same).

The Prison Litigation Reform Act of 1996 (PLRA), 18 U.S.C. §§ 3626, is applicable in this context because Plaintiffs are prisoners. Under the PLRA, a preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). This standard, as the Ninth Circuit has noted, merely restates the standard that pre-existed the PLRA. *See Armstrong v. Davis*, 275 F.3d 849, 872 (9th Cir. 2001).

Under the PLRA, though, a preliminary injunction must expire at the end of 90 days, *see* 18 U.S.C. § 3626(a)(2), but a district court may issue a new 90-day injunction if the conditions that precipitated the first injunction have not been abated. *See Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) (holding that "[n]othing in

the statute limits the number of times a court may enter preliminary relief" if plaintiffs continue to show the need for it).

It is important to bear in mind that evidentiary rules are relaxed when plaintiffs file motions for a preliminary injunction.  As this Court explained in *Balla*: "Affidavits submitted on a preliminary injunction motion are not subjected to the same strict standards (personal knowledge and competency to testify) as those submitted on a summary judgment motion, and they may contain hearsay. 11A Charles Alan Wright, *Federal Practice and Procedure* ¶ 2949 (2d ed. 1995); *see also Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)." *Balla*, 2006 WL 1793555 at *5.  In this motion, Plaintiffs rely on several types of evidence of varying degree of reliability: declarations signed under penalty of perjury, grievances submitted by prisoners and responses to them from Jail officials, letters sent by Sheriff Smith and Captain Hansen, and inspection reports issued by the Idaho Sheriff's Association.  Naturally, the Court should give whatever weight to these submissions the Court deems appropriate, but at this stage Defendants may not seek to strike them based merely on their informality or because they contain hearsay. *See Balla*, 2006 WL 1793555 at *5.

## THE EIGHTH AMENDMENT PROTECTION

The Eighth Amendment prohibits the infliction of "cruel and unusual punish-ments." U.S. Const. Amend. VIII.  The Eighth Amendment is a prisoner's safety net.  "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting Helling v. McKinney, 509 U.S. 25, 31 (1993).  When prison officials disregard the Eighth Amendment, "judicial intervention is

*indispensable.*" Rhodes v. Chapman, 452 U.S. 337, 354 (1981) (emphasis in original). The Eighth Amendment obligates prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832, quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

The Eighth Amendment test has two components, one objective and the other subjective. First, the plaintiff must show that he or she is "incarcerated under conditions posing a substantial risk of serious harm." Farmer, at 834. Second, the plaintiff must show that the defendant prison official had a sufficiently culpable state of mind. Id.

1. The objective component

A prisoner alleging a violation of the Eighth Amendment must show from objective facts that a condition of confinement creates "a substantial risk of serious harm." Farmer, at 834. It is not necessary to show that the harm has already occurred, but only that it is substantially likely to occur. Unsafe or unhealthy conditions that "pose an unreasonable risk of serious damage to [a prisoner's] future health" satisfy the objective prong. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

Moreover, a prisoner is not required to wait until the injury actually occurs before filing suit. A "remedy for unsafe conditions need not await a tragic event," and prison officials are not free to "ignore a condition of confinement that is sure or very likely to cause serious injury and needless suffering" merely because no harm has yet occurred. *Helling*, 509 U.S. at 33; *accord*, *Farmer*, 511 U.S. at 845.

Courts are permitted to consider prison conditions in their entirety in determining whether any one condition violates the Eighth Amendment.  Conditions that have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise" violate the Eighth Amendment in combination. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  In addition, courts should consider the length of time that the plaintiff is subject to an unsafe or unhealthy condition. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (noting that confinement in a "filthy, overcrowded cell" may be tolerable "for a few days and intolerably cruel for weeks or months.")

2. The subjective component

In addition to proving an objective risk of serious harm, Farmer requires an Eighth Amendment plaintiff to prove that the defendant official had a culpable state of mind--known as "deliberate indifference."  The deliberate indifference standard is a middle ground that lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Farmer, at 836.  The Farmer Court likened this standard to criminal recklessness, which makes persons liable when they "consciously disregard[] a substantial risk of serious harm." Id. at 837-38.  Proving deliberate indifference is an issue of fact that may be demonstrated "in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, at 842 (emphasis added).  Such constructive knowledge can be demonstrated by showing that a dangerous or unhealthy condition "was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the

defendant-official being sued had been exposed to information concerning the risk.'" Id. (Citation omitted.)

Once a prison administrator is "exposed to information concerning the risk," he or she may not turn a blind eye to it.  On the contrary, either the risk must be abated or, if the administrator is uncertain as to its depth or degree, an investigation must ensue.  An administrator "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences that he strongly suspected to exist." Id., at 842 n.8.

An Eighth Amendment plaintiff need only show that the *risk* of injury is obvious, and need not show that the defendant wanted the plaintiff or some other particular person to be injured by that condition.  "[A] prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be" harmed. Farmer, at 843.

It bears emphasis that Plaintiffs are not asking this Court to adopt a "totality of conditions" approach, in which individual conditions of confinement are *not* unconstitutional but their combined effect is perceived as violating the Eighth Amendment.  Such an approach was condemned in *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).  Plaintiffs, on the contrary, demonstrate here that each of the five conditions addressed in this motion--overcrowding, ventilation, sanitation, plumbing, and recreation--independently violate the Constitution.  But as the Ninth Circuit explained in *Wright v. Rushen*, in a jail or prison "each condition of confinement does not exist in isolation," and it is appropriate to consider them in combination "especially when the ill-

effects of particular conditions are exacerbated by other related conditions." *Wright*, 642 F.2d at 1133.  Here, for instance, as explained below, the Jail's inadequate ventilation is exacerbating the Jail's sanitation by making it virtually impossible to prevent the growth of mold due to the resulting humid conditions and limited air flow.

## THE FOURTEENTH AMENDMENT PROTECTION

The Canyon County Jail houses both pretrial detainees and sentenced prisoners. Pretrial detainees have not been convicted of any crime and therefore the state has no authority to punish them; any punishment other than loss of liberty is a violation of the due process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-36 & n.16 (1979); *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008).  Thus, those members of the Plaintiff class who are pretrial detainees enjoy greater protection against arbitrary or injurious state action than convicted prisoners. *See Bell*, 441 U.S. at 538-39; *Pierce*, 526 F.3d at 1205.  *See also Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) ("[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment on convicted prisoners.")

For purposes of resolving the present motion, the Court need not distinguish between the two subclasses of Plaintiffs.  The dangerous and unhealthy conditions at issue here clearly violate the Eighth Amendment and, hence, must also violate the Fourteenth. *See Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 n.7 (9th Cir. 1991).

## FACTS RELATING TO EACH OF PLAINTIFFS' FIVE CLAIMS

The following facts are related to each of Plaintiffs' five requests for preliminary injunctive relief.

1.   The Canyon County Jail in Caldwell, Idaho, consists of three buildings commonly called the Annex, the Dale G. Haile Detention Center, and the Work Release Center. (*See* Exhibit 1 at 1.)

2. The Annex was built in 1948.  It was abandoned in 1993 when the Dale G. Haile Detention Center was opened.  However, because of overcrowding in the Detention Center, the Annex was somewhat refurbished and reopened in 2001.  Due to violations of Idaho Jail Standards, the Annex was again closed in 2006.  In March 2007, the Annex was reopened after receiving some limited refurbishing and now houses approximately 70 prisoners. (*See* Exhibit 1 at 1.)

3.  The Dale G. Haile Detention Center was built in 1993 and houses the majority of the Canyon County prisoners, both male and female, on its two floors.

4.  The Idaho Sheriff's Association (ISA), although not funded by the state of Idaho, performs official functions for the state and for county governments. *See, e.g.,* Idaho Code 34-618 (requiring all newly elected sheriffs in Idaho to attend "the newly elected sheriffs' school sponsored by the Idaho sheriffs' association.")   One of ISA's functions is to inspect each county jail twice a year and issue written findings.

## UNCONSTITUTIONAL CONDITION # 1: OVERCROWDING

1.  In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Supreme Court held that placing more prisoners in a cell than it was designed to hold is not unconstitutional *per se*.  However, such overcrowding *becomes* unconstitutional when it (a) results in an

increase in violence or threat of violence, (b) results in preventing prisoners from receiving necessary services such as adequate clothing, bedding, and recreation, or (c) exacerbates or creates unhealthy conditions of confinement, such as inadequate ventilation, inadequate sanitation, or inadequate plumbing. *See Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984); *Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir. 1982); *Balla v. Board of Corrections*, 656 F. Supp. 1108 (D. Idaho 1987).

2. Subsequent to *Rhodes v. Chapman*, this Court (and other courts) added another prohibition: overcrowding is unconstitutional *per se* if it results in forcing prisoners to sleep on the floor. *See Balla*, 656 F. Supp. at 1118. In *Loya v. Board of County Commissioners of Bannock, County, Idaho,* 1992 WL 176131 (D. Idaho 1992), the Court reiterated this prohibition. *See Loya*, 1992 WL 176131 at *2 ("This Court previously held that sleeping on the floor is constitutionally prohibited. *Balla II*, 656 F. Supp. at 1118.")

3. The Court in *Loya* concluded that the Bannock County Jail was "grossly overcrowded" because the jail routinely held 30% more prisoners than it was designed to hold, some of whom were forced to sleep on the floor. *See Loya*, 1992 WL 176131 at *2.

4. Overcrowding of the Dale G. Haile Detention Center is just as bad as it was in *Loya*. Sheriff Smith admitted in his December 15, 2008 letter to Nick Albers, cited earlier (*see* Exhibit 2), that "we have too many inmates." (Exhibit 2 at p. 4.) According to a study conducted for Sheriff Smith, the Dale G. Haile Detention Center should have no more than 344 beds. (*See* Exhibit 3.) But according to the Jail's population records, the Detention Center in 2008 had an average daily population 432 (92 more than it should have). (*See* Exhibit 4.) The excess prisoners were placed on bunk beds that had been added in some housing units or, when those were full, they were given a thin mattress and

ordered to sleep on the floor.  On average, 21 prisoners a day slept on the floor in 2008. (*See id.*)

5.   Named plaintiff Amanda Davis is one of the prisoners forced to sleep on the floor in 2008.  Ms. Davis, who was four-and-a-half months pregnant at the time, spent nearly three weeks on a thin mattress on the floor. See Declaration of Amanda Davis, (attached as Exhibit Decl.1).

6.   As discussed below, the Canyon County Jail suffers from inadequate ventilation, inadequate sanitation, and inadequate plumbing.   The overcrowded conditions in the Jail exacerbate these health hazards.  The Idaho Sheriff's Association has drawn the attention of Canyon County officials to the correlation between the crowded conditions in their Jail and the Jail's inability to provide a safe and healthy environment.  For instance, on August 28, 2007, ISA Jail Standards Coordinator, Nick Albers, sent a letter to Sheriff Smith stating that "overcrowding would seem to be the inherent problem that creates security issues, tasks the staff and the physical plant [and] makes it very difficult to keep up maintenance, cleaning and refurbishment of the facility." (*See* Exhibit 5 at 1.)  The ISA's 2008 inspection report, issued June 11, 2008, reached the same conclusion. (*See* Exhibit 6 at 1.)   The ISA found that cells in the Detention Center "were considerably overcrowded" and "were very humid and smelled;" that "mold, scaling of paint, and fixtures [] were not working or needed cleaning and refurbishment in numerous cells;" the Jail's "ventilation systems cannot move enough air" for the population; and the Jail's overcrowded conditions renders it "impossible to do routine maintenance, painting and repairs, . . . [and] increase[s] the likelihood of mold and other airborne problems." (*See id.*)

7.   Sheriff Smith made certain that the Commissioners of Canyon County knew about the Jail's unhealthy and dangerous conditions of confinement.  They were notified in Hansen's October 20, 2008 letter (Exhibit 1) that overcrowding "affects the inmates negatively and contributes to their hostile response to the environment.  This raises the level of aggression that inmates have toward each other and toward Canyon County employees, thus increasing the potential for a violent situation."  The letter also notified them that sanitation was deficient (including mold and rust in the housing units); plumbing was deficient (including "standing water" and "[p]lumbing leaks from sewer lines"); and ventilation was deficient. (*See id.* at 2.)

8.   Based on a similar combination of unhealthy and dangerous conditions as those present here, the Ninth Circuit in *Toussaint v. Yockey* affirmed a district court's grant of preliminary injunctive relief. *See Toussaint*, 722 F.2d at 1492. *See also Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir. 1982); *Balla v. Board of Corrections*, 656 F. Supp. 1108 (D. Idaho 1987).  The same relief should issue in the instant case.

**UNCONSTITUTIONAL CONDITION # 2: INADEQUATE VENTILATION**

1.   "Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985)." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996).

2.   The Canyon County Jail suffers from inadequate ventilation and air flow that undermines the health of inmates and the sanitation of the jail.  Two ISA inspection reports in 2008, followed by the candid and urgent request from Sheriff Smith and Captain Hansen to the Commissioners, present indisputable evidence in this regard.  On

April 1, 2008, the ISA inspected the Canyon County Jail, and issued its report on June 18, 2008. (*See* Exhibit 6.)  The ISA found that cells in the Dale G. Haile Detention Center "were very humid and smelled;" that the Center's "ventilation systems cannot move enough air" for the population; and the Center's overcrowded conditions renders it "impossible to do routine maintenance, painting and repairs, . . . [and] increase[s] the likelihood of mold and other airborne problems." (*See* Exhibit 6.)

       3.  On October 6, 2008, ISA inspectors returned to the Canyon County Jail but this time confined themselves to "selected locations." (*See* Exhibit 7 at 1.)  One location inspected was the Annex, the 1948 jail that the county had reopened.  On October 16, 2008, ISA issued its inspection report.  The report expressly notes, as the earlier report noted with respect to the Detention Center, that poor ventilation in the Annex was undermining sanitation.  The report (Exhibit 7) states in relevant part:

> The cells in the Annex were the most troubling and there were several issues that need immediate attention.  The bathroom/shower areas were found to be without exhaust or appropriate ventilation.  Moisture and condensation was everywhere in these areas.  There were water droplets on the ceiling, which then dropped onto the floor.  Mold was observed on the ceiling and upper shower walls.  Several toilets were not in working order. . . . These areas were very dirty and unsanitary.

       4.  Several weeks later, Captain Hansen sent his letter to the Commissioners, asking that they finance "a large scale renovation" of the Jail.  As part of this renovation, Hansen advised, "HVAC vents should be commercially cleaned and the system upgraded to meet the current demand for HVAC so that proper air quality is maintained in the living environment throughout the year in the facility." (*See* Exhibit 1 at 2.)

       5.  Ventilation deficiencies in the Canyon County Jail have been reported in the media.  An article in the *Idaho Statesman* on May 21, 2008 states: "The air is thick with

humidity at the Canyon County jail.  Black plastic trash bags hang from overhead pipes in one unit, collecting condensation." (*See* "Jail issue dominates in Canyon elections," reprinted at www.idahostatesman.com/eyepiece/v-print/story/387261.html.)

6.   The Supreme Court has made it clear, as explained earlier, that prisoners complaining about unhealthy conditions of confinement, including poor ventilation, need not demonstrate a current infirmity from the offensive conditions.  Prisoners need only show that these inadequate conditions create a significant risk to health and safety.  *See Helling v. McKinney*, 509 U.S. 25 (1993) (holding that prisoners subjected to high levels of second-hand cigarette smoke need not prove current illness to obtain relief under the Eighth Amendment).   This principle applies to claims of inadequate ventilation, as *Helling* illustrates.  Inadequate ventilation exposes prisoners to "communicable diseases and identifiable health threats" and thus implicates constitutional guarantees. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). *See also See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1396, 1409 (N.D. Cal. 1984), *rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986) (noting that inadequate air flow "fosters the spread of communicable disease among the inmates").  Poor ventilation also exacerbates sanitation deficiencies (as ISA reports confirm is occurring here), raising additional constitutional concerns.  *See Hoptowit v. Spellman*, 753 F.2d at 784; *Ramos v. Lamm*, 639 F.2d 559, 569 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981).

7.   Many prisoners of the Canyon County Jail have complained to staff about the inadequate ventilation.   Named plaintiff Alisha Baker, who has been confined in segregation in the Annex for nearly two months, submitted a Grievance to staff on March 4, 2009. (*See* Exhibit Griev1.)   Ms. Baker reported that ventilation in her cell is

"horrible," that she is experiencing "dizzy spells," and that the air is "extremely stuffy." (*See id.*)  The only response she received was:  "Maintenance is aware of the ventilation issues." (*See id.*)

8.   Similarly, class plaintiff Misty Canada, who resides in Pod L of the Detention Center, submitted a Grievance on March 4, 2009. (*See* Exhibit Griev2.)  Ms. Canada reported having difficulty breathing due to the lack of fresh air, that the air in the Pod is stuffy and humid, and that prisoners "can't get rid of colds that are brought in by the new inmates." (*See id.*)  As with Ms. Baker, the only reply she received was: "Maintenance is aware of the ventilation issues." (*See id.*)[1]

9.   Likewise, on March 5, 2009, lead plaintiff Amanda Davis, who resides in H Pod of the Detention Center, submitted a Grievance to staff. (*See* Exhibit Griev3.)  Ms. Davis reported that "a lot of inmates including myself are getting ill because we do not have some type of proper way for us to get fresh, clear air into our unit."  In a separate Grievance filed the same day, Ms. Davis reported that she has "trouble breathing" due to the mold in the shower area. (*See* Exhibit Griev4.)

9.   The Jail's poor ventilation results in a build-up of stale and foul air, increases the risk of spreading airborne disease, and exacerbates the problem of mold, which plagues the Jail. The unhealthy ventilation in the Canyon County Jail violates the Eighth Amendment.   *See Toussaint v. McCarthy*, 597 F. Supp. at 1396 (finding unconstitutional ventilation deficiencies similar to those here); *Hoptowit v. Spellman*, 753 F.2d at 784; *Keenan v. Hall*, 83 F.3d at 1090; *Martino v. Carey*, 563 F. Supp. 984, 999 (D. Ore. 1983).

---

[1]Next to this response on the Grievance are some words that Ms. Canada wrote, not staff.  In reply to the statement that "Maintenance is aware of the ventilation issues," Ms. Canada wrote: "It's been like this awhile.  They need to be not only aware of it but fixing it as well."

**UNCONSTITUTIONAL CONDITION # 3: INADEQUATE SANITATION**

1.   Sanitation is one of "[t]he discrete basic human needs that prison officials must satisfy." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).  *See also Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985); *Ramos v. Lamm*, 639 F.2d at 568-70; *Carty v. Farrelly*, 957 F. Supp. 727, 736 (D.V.I. 1997) ("Generally, sanitation is one of the most basic human needs.")

2.   Courts have enforced the Eighth Amendment guarantee of a sanitary environment in a host of different contexts relevant to this case.  Courts have held, for instance, that (1) jails must provide adequate cleaning supplies to prisoners on a daily basis and supervise prisoners to ensure cleanliness of living areas, *see Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985); *Ramos v. Lamm*, 639 F.2d at 569-70; *Dawson v. Kendrick*, 527 F.Supp. 1252, 1264, 1289 (S.D.W.Va. 1981); (2) jail officials must engage in aggressive action to eliminate mold in housing areas and ensure adequate ventilation to prevent the buildup of mold, *see Benjamin v. Fraser*, 161 F.Supp.2d 151, 180 (S.D.N.Y. 2001), *aff'd in part, vacated in part and remanded on other grounds*, 343 F.3d 35 (2d Cir. 2003); (3) jails must promptly repair leaky sewage pipes and ensure proper drainage from showers, *see Balla v. Board of Corrections*, 656 F.Supp. at 1118-19; *Dawson v. Kendrick*, 527 F.Supp. at 1287; *Jones v. City and County of San Francisco*, 976 F. Supp. 896,  910 (N.D. Cal. 1997); *Tillery v. Owens*, 719 F.Supp. 1256, 1271 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990); *Inmates of Occoquan v. Barry*, 717 F.Supp. 854, 866-67 (D.D.C. 1989); and (4) jails must clean and sanitize mattresses prior to issue to another prisoner. *See Benjamin v. Fraser*, 161 F. Supp.2d at 180; *Carver v. Knox County, Tenn.*, 753 F.Supp. 1370, 1389 (E.D. Tenn. 1989), *remanded for reconsideration*, 887

F.2d 1287 (6th Cir. 1989), *adhered to on remand*, 753 F.Supp. 1398 (E.D.Tenn. 1990); *Toussaint v. McCarthy*, 597 F.Supp. 1388 at 1411.

3.   Jail officials cannot escape their constitutional duty to ensure a sanitary jail by blaming the prisoners either for causing the poor conditions or for failing to clean them. Jail officials may use inmate workers to help clean the jail, but they cannot abdicate their responsibility to ensure that the jail is sanitary. *See Hoptowit v. Spellman*, 753 F.2d at 784; *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989); *Blake v. Hall*, 668 F.2d 52, 57-58 (1st Cir. 1981) ("the prison administration must bear the ultimate responsibility for cell block conditions."); *Palmigiano v. Garrahy*, 443 F.Supp. at 963-64 (holding that jail cleanliness "must be the basic responsibility of management").

4.   Many aspects of the Canyon County Jail are unsanitary.   Captain Hansen informed the Commissioners last October that the Canyon County Jail needs "more than just cosmetic and routine cleaning." (*See* Exhibit 1 at 2.)   Due to years of neglect, what the Jail needs, the Captain said, is "[c]omplete deep sanitizing and cleaning of the living units that house inmates.   This should include power washing and painting." (*See id.*) Moreover, given that such a deep sanitizing will likely require the use of toxic materials and create airborne contaminants, "[i]nmates may need to be housed in other facilities to accomplish this." (*See id.*)

5.   As recently as December 15, 2008, Sheriff Smith acknowledged in a letter to the Idaho Sheriff's Association that the Canyon County Jail was unsanitary in many different areas. (*See* Exhibit 2.)  For one, "mold . . . continues to be a problem." (*Id.* at 2.) In addition, "sanitation and maintenance in regard to a written housekeeping plan is not in place." (*Id.* at 3.)   Furthermore, the Jail was violating eight different provisions of the

Idaho Jail Standards regarding sanitation, which Sheriff Smith cited as subsections b, c, d, e, f, g, i, and k of Chapter 10.4 of the Standards. (*Id.* at 4.) Those provisions (attached as Exhibit 8) require jails, *inter alia*, to wash exposed areas of housing units at least weekly; to scrub floors at least weekly; to wash walls and ceilings as needed; to clean toilets, lavatories, showers, and sinks with hot, sudsy water daily; to require prisoners to keep their own cells clean; and to provide adequate cleaning supplies to prisoners to be used under the supervision of facility employees.

6. Prisoners of the Canyon County Jail have submitted many grievances seeking to have sanitation problems fixed. Listed below are nine examples in alphabetical order by prisoner surname. Three things of significance should be highlighted. First, *in not one instance did staff refute the claim of inadequate sanitation*. Second, the response of staff in virtually all instances is essentially to blame the prisoner and suggest that if he or she would only request cleaning supplies, the defect could be eliminated--even when the prisoner was complaining about such systemic problems as clogged drains, leaky pipes, and persistent mold. Lastly, in most instances when prisoners complained about mold (as many prisoners have done), staff respond by suggesting that these prisoners notify "maintenance" or "the housing manager" of the problem. Jail administrators, however, *already* know about the persistent problem of mold. (*See* Exhibit 2, letter of Sheriff Smith to Nick Albers: "mold . . . continues to be a problem.") Ironically, as discussed below, a prisoner who complained in February 2009 about mold in her living area was told that "maintenance is aware of this issue," and yet one week later, several prisoners who made similar complaints about mold were advised to notify "maintenance." In short, prisoners often get the run-around, and in any event, unsanitary conditions persist.

(a)    On March 1, 2009, Misty Canada reported "black mold in the restroom/shower areas." In response, Ms. Canada was told that she was already receiving "adequate amounts of cleaning supplies." (*See* Exhibit Griev5.)[2]

(b)   In a separate Grievance, Ms. Canada asked staff to remove the "standing water in the floor drains/showers," which has a foul odor. She was told in response to "[f]eel free to scrub and clean your living area." (*See* Exhibit Griev6.)

(c)   Named plaintiff Desiree Comingo submitted two Grievances on March 1, 2009, advising staff that she is a severe asthmatic and that the mold in her housing area is placing her health "in grave danger." She reported that there is mold "everywhere, but in the bathroom is where it is the very worst." She was told in response to "let the housing manager know about" the mold. (*See* Exhibit Griev7.)

(d)   Lead plaintiff Amanda Davis submitted a Grievance on March 5, 2009, advising staff that the drains in the showers were clogged and, as a result, the showers were filling with water. She also reported that the showers have mold, and that this is making her sick. In response, Ms. Davis was advised to "point out" these cleaning issues to the housing manager, and to "ask for supplies" if she wanted to clean the drains. (*See* Exhibit Griev4.) In her Declaration (Exhibit Decl. 1), Ms. Davis states that she is an asthmatic and the unsanitary conditions of the Jail, especially all the mold, is causing her to have coughing spells, sneezing, and headaches.

---

[2]With due respect, the Jail's response is disingenuous. There is *no* "adequate amount" of cleaning supplies that prisoners could be given to clean the mold, and Defendants know it. This is why Captain Hansen told the Commissioners that the Jail needs "deep sanitizing and cleaning." Moreover, until the Jail's ventilation is improved, fighting the mold is a losing battle. In any event, it is the Jail's responsibility, and not that of Ms. Canada, to ensure that mold is eliminated. If employees believe that Ms. Canada can cure this problem, they should supervise her efforts and make sure it is completed, not merely suggest that she obtain supplies.

(e)    On December 18, 2008, prisoner Jeffrey Gross submitted a Grievance advising staff that drains were clogged and he has seen insects fly out of the drains; that there is mold in the showers as well as stagnant water; and that there was "deplorable filth" in his housing unit because staff were not ensuring that prisoners cleaned their cells. In response, Mr. Gross was told that the administration was "aware of some physical maintenance issues," and it was suggested that Mr. Gross submit maintenance requests to the housing manager. (*See* Exhibit Griev8.)

(f)    Named plaintiff Pedro Martin submitted two Grievances to staff on March 3, 2009 regarding sanitation, advising them that faucets were "caked with grime;" his Pod is issued only one mop per week, which is not sufficient; and mattresses are not sanitized before being issued to the next prisoner. He was informed in reply: "Mr. Martin you may receive and use cleaning supplies on your time out." (*See* Exhibit Griev9.)

(g)    Class plaintiff Sabra McGinnis submitted a Grievance on February 25, 2009 advising staff that there was "inadequate sanitation [in the] shower and toilet areas, mold on floor, ceiling, walls inside showers." She was told in reply: "Maintenance is aware of this issue," and she should "feel free" to clean these areas herself. (*See* Exhibit Griev10.)

(h)    Class prisoner Derek Trefren submitted a Grievance on December 17, 2008 advising staff that "no cleaners or equipment is made available to individuals who wish to try and make their living space clean and sanitary." Mr. Trefren also called attention to the mold on the walls, as well as "insects breeding in the stagnant water in the bathroom from the plugged floor drains and cracked floor seals." Mr. Trefen was told in response that the Jail was "aware of some physical maintenance issues," and it was suggested that he "put in maintenance requests." (*See* Exhibit Griev11.)

7.  What was true for the prison at issue in *Hoptowit v. Spellman*, 753 F.2d at 784 is true here: there is "overall squalor" at the Canyon County Jail that violates the Eighth Amendment.   The conditions described above--documented by the Idaho Sheriff's Association, admitted by Sheriff Smith and Captain Hansen, and repeatedly reported by prisoners--exceeds the bounds of human decency and constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Toussaint v. McCarthy*, 801 F.2d at 1107; *Hoptowit v. Ray*, 682 F.2d at 1246; *Hoptowit v. Spellman*, 753 F.2d at 784; *Ramos v. Lamm*, 639 F.2d at 568-70; *Balla*, 656 F. Supp. at 1118-19; *Dawson v. Kendrick*, 527 F. Supp. at 1287; *Jones v. City and County of San Francisco*, 976 F. Supp. at 910; *Tillery v. Owens*, 719 F. Supp. at 1271; *Inmates of Occoquan v. Barry*, 717 F. Supp. at 866-67; *Martino v. Carey*, 563 F. Supp. at 991-92, 1000.

## UNCONSTITUTIONAL CONDITION # 4: INADEQUATE PLUMBING

1.  Plumbing that is "in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being" constitutes cruel and unusual punishment. *Hoptowit v. Spellman*, 753 F.2d at 783.  *Accord: Ramos v. Lamm*, 639 F.2d at 567-69; *Gates v. Collier*, 501 F.2d 1291, 1300-03 (5th Cir. 1974); *Carty v. Farrelly*, 957 F. Supp. at 736 ("Inoperable plumbing systems contribute to both the risk of conveying waterborne disease and vermin infestation, and thus implicate constitutional violations."); *Benjamin v. Fraser*, 161 F. Supp.2d at 171; *Dennis v. Thurman*, 959 F. Supp. 1253, 1261 (C.D.Cal. 1997) ("Water and functioning plumbing are basic necessities of civilized life."); *Martino v. Carey*, 563 F. Supp. 984, 999 n.7 (D. Ore. 1983).

2.   This Court has found that plumbing deficiencies similar to those present here violate the Eighth Amendment. *See Balla v. Idaho Bd. of Correction*, 656 F. Supp. at 1118; *Loya*, 1992 WL 176131 at *3.

3.   Occasional, isolated plumbing problems will occur in every jail and prison. But plumbing problems in the Canyon County Jail are not isolated or occasional.   Rather, they are incessant, widespread, and systemic.   Captain Hansen's letter to the Commissioners cites six examples of systemic plumbing problems in need of repair: "Plumbing leaks from sewage pipes that run through the interior of the building need to be repaired;" leaking shower faucets should be repaired; "[p]lumbing drains and lines in units need to be cleaned out so there is no standing water in them;" plumbing leaks in ceilings need to be repaired and damaged ceiling panels replaced; hot water must be made available in janitor closets to facilitate proper cleaning of housing units; and a "documented schedule" needs to be created to ensure proper maintenance, including "drain cleaning." (*See* Exhibit 1 at 2-3.)

4.   Numerous prisoners have complained to Jail staff about precisely the deficiencies cited in Hansen's letter.  For instance, class plaintiff Misty Canada submitted a Grievance on March 1, 2009, in which she asked staff to repair the "standing water in the floor drains/showers" that was causing the Pod to "stink."  She was told in response to "[f]eel free to scrub and clean" those areas. (*See* Exhibit Griev6.)  Lead plaintiff Amanda Davis submitted a Grievance on March 5, 2009, stating that she has "continuously" asked staff to fix plumbing problems that remain unresolved, including leaks in the shower area; "our ceiling has been leaking above our [dining] table;" and some cells lack hot or cold water.  She was advised in response to inform "the housing deputy." (*See* Exhibit

Griev12.)  Class plaintiff Sabra McGinnis submitted a Grievance on February 25, 2009, informing staff that water was leaking onto the floor from clogged drains in the showers. She was told in reply that "maintenance is aware of this issue." (*See* Exhibit Griev13.) Named plaintiff Pedro Martin submitted a Grievance on March 4, 2009, advising staff that his sink leaks, that it is caked with rust and that "no matter what I do," he cannot remove the rust.  In addition, Mr. Martin reported that the showers are not working properly and that the water in the shower is dispensed either really hot or really cold.  He was advised in reply to "speak with the pod deputy." (*See* Exhibit Griev14.)

5.  The plumbing system in the Canyon County Jail is in such disrepair that it deprives prisoners of basic elements of hygiene and seriously threatens their physical and mental well-being.  Jail staff either cannot or will not maintain plumbing fixtures in proper working order.  These conditions violate the Eighth Amendment. *See Hoptowit v. Spellman*, 753 F.2d at 783; *Balla*, 656 F. Supp. at 1118; *Loya*, 1992 WL 176131 at *3; *Ramos v. Lamm*, 639 F.2d at 567-69; *Gates v. Collier*, 501 F.2d 1291, 1300-03 (5th Cir. 1974); *Toussaint v. McCarthy*, 597 F. Supp. 1396-97, 1409; *Carty v. Farrelly*, 957 F. Supp. at 736; *Benjamin v. Fraser*, 161 F. Supp.2d at 171; *Dennis v. Thurman*, 959 F. Supp. at 1261; *Martino v. Carey*, 563 F. Supp. at 999 n.7.

## UNCONSTITUTIONAL CONDITION # 5: INADEQUATE RECREATION

1.  "Exercise is one of the basic human necessities protected by the Eighth Amendment. Moreover, the Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective." *Pierce v. County of Orange,* 526 F.3d 1190, 1211-12 (9th Cir. 2008), citing *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993).  Prisoners held in a county jail

"for more than a short period of time" must be offered a reasonable opportunity for both indoor *and* outdoor recreation. *Pierce*, 526 F.3d at 1212.

2.   It is well settled that "some opportunity for exercise must be afforded to prisoners" unless a legitimate penological reason warrants a denial. *See Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985). *See also Pierce*, 526 F.3d at 1212; *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979); *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987).

3.   Four policies and practices of Defendants with respect to recreation violate the Constitution: (1) the only indoor "exercise" Defendants offer is a dayroom that contains no exercise equipment; (2) although the Jail has an outdoor recreation yard, access to it is rare; (3) even when prisoners are allowed access to the outdoor yard, they often find that guards have allowed the county's K-9 dogs to use the yard as a toilet; and (4) segregated prisoners are not allowed access to the outdoor recreation area and thus have no opportunity for out-of-cell exercise.

4.   In *Pierce*, the Ninth Circuit expressly held that jail dayrooms do "not--given the space constraints and absence of any appropriate equipment--constitute an exercise opportunity." *See Pierce*, 526 F.3d at 1212 n.22.   Thus, prisoners who requests access to exercise equipment should not be told--as they were in *Pierce* and as they are in the Canyon County Jail--to do calisthenics in their dayroom instead. *See id.*

4.   The Canyon County Jail has no indoor recreation facility and no recreation equipment located anywhere in the jail.   Indeed, Defendants contend that they have no duty to offer exercise equipment.   When named plaintiff Alisha Baker submitted a Grievance on March 4, 2009, requesting access to exercise equipment for "aerobic

[exercise] and weights for large muscle activity," explaining that when not incarcerated she exercises three to five times a week, she was told by the administration: "We are not required to provide equipment for exercise." (*See* Exhibit Griev15.)   When lead plaintiff Amanda Davis submitted a Grievance on March 5, 2009, requesting access to exercise equipment, she was told in reply that she could do pushups and situps instead. (*See* Exhibit Griev16.)   Class plaintiff Misty Canada submitted a Grievance on March 1, 2009, requesting access to exercise equipment either indoors or outdoors.   She was told that "Equipment is not allowed for safety and security reasons." (*See* Exhibit Griev17.)   Given that exercise equipment has been constructed for use in correctional institutions--and virtually every prison and jail in the United States provides access to such equipment--the response given to Ms. Canada's request lacks credibility.   Courts would not be requiring jails to provide access to recreational equipment, as the Ninth Circuit did in *Pierce*, if safe and secure equipment were unavailable.

    5.   An outdoor recreation area is available for prisoner use in the Detention Center.   However, access to it is rarely offered, and sometimes when it is offered, prisoners who enter the area discover that employees have allowed the county's K-9 dogs to use the area as a bathroom.   (*See* Exhibit Griev17, noting that prisoner Misty Canada has found "messes" left by dogs in the outdoor area.)   (*See also* ExhibitGriev8: prisoner Jeffrey Gross notified staff that "officers even let their dogs out there [in the recreation area] to piss on the walls and floor.")   (*See also* Exhibit Griev18: prisoner Alisha Baker reported that she was offered outdoor recreation "once in a six week period of time" while confined in the women's housing unit).   Moreover, there is no exercise equipment in the outdoor yard and prisoners are not even allowed to run in the yard.   Prisoner Sabra

McGinnis submitted a Grievance on March 4, 2009, notifying staff that she had been ordered by a deputy not to run in the outdoor exercise yard. The response: "You're right. You're not allowed to run." (*See* Exhibit Griev19.)

6.   Defendants do not permit prisoners in segregation to access the outdoor recreation yard. *See* Declaration of named plaintiff Alisha Baker (Exhibit Decl. 2). Ms. Baker spent nearly two months in segregation earlier this year. Not once was she allowed to use the outdoor recreation yard, despite repeated requests. In *Toussaint v. Yockey*, 722 F.2d at 1493, the Ninth Circuit affirmed the issuance of preliminary injunctive relief to halt the practice of denying outdoor recreation to prisoners confined in segregation. *See also Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995) (holding that segregation for six weeks without access to outdoor recreation states a constitutional claim); *Martino v. Carey*, 563 F. Supp. at 1001 ("expert witnesses testified that the denial of all outdoor exercise endangered the physical and mental health of prisoners and led to physical and mental deterioration. I agree with this testimony.")

7.   Indeed, segregated prisoners in Canyon County are denied both outdoor and indoor recreation, given that the Jail has no indoor recreation facility or exercise equipment. This total denial of recreation clearly violates the Eighth and Fourteenth Amendments. *See Pierce*, 526 F.3d at 1212. "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). *See generally Toussaint v. McCarthy*, 597 F. Supp. at 1401-02, 1412 (enjoining a practice similar to the one at issue here).

## PLAINTIFFS MEET THE STANDARDS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction on five urgent health and safety issues: overcrowding, ventilation, sanitation, plumbing, and recreation.  In order to prevail on their motion, Plaintiffs must prove: (1) that they will suffer irreparable injury if the relief is denied; (2) that they will probably prevail on the merits; (3) that the balance of potential harm favors them; and (4) that the public interest favors granting relief.  *See Balla*, 2006 WL 1793555 at *2.  Plaintiffs satisfy all four criteria.

### 1.  <u>Plaintiffs will suffer irreparable injury if the relief is denied</u>

Every court to address the kinds of unhealthy and dangerous conditions as those existing in the Canyon County Jail has enjoined their continued operation, concluding that such conditions constitute cruel and unusual punishment in violation of the Eighth Amendment.  In several instances, courts issued preliminary injunctive relief prior to issuing permanent injunctive relief. *See, e.g., Toussaint v. Yockey,* 722 F.2d 1490 (9th Cir. 1984) (affirming the issuance of preliminary injunctive relief to cure overcrowding, inadequate ventilation, inadequate sanitation, and inadequate plumbing); *Wright v. Enomoto*, 462 F. Supp. 397 (N.D. Cal. 1976) (three-judge court), *aff'd*, 434 U.S. 1052 (1978); *Martino v. Carey*, 563 F. Supp. at 987 (noting that the court had previously issued interim relief to immediately halt inadequate ventilation and inadequate recreation).

Irreparable harm is harm that cannot be undone through monetary remedies. When an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary. *See Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Mayweathers v. Newland*, 258 F.3d 930 (9th Cir. 2001) (affirming the issuance of a

preliminary injunction to protect the First Amendment rights of prisoners).  Furthermore, "[o]ne does not have to await the consummation of threatened injury to obtain preventative relief." *Farmer*, 511 U.S. at 845, *quoting Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923).  The deficiencies present in the Canyon County Jail have the substantial likelihood of causing irreparable injury, as every court to consider similar deficiencies has recognized.

**2.  Substantial Likelihood of Success on the Merits**

Prisoners claiming, as here, that the conditions of their confinement violate the Eighth Amendment must satisfy the two *Farmer* tests discussed earlier in this brief. First, they must show that the deprivation is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834.  Second, they must show that defendants are "deliberately indifferent" to this harm. *Id.*

The Canyon County Jail is overcrowded, dirty, smelly, damp, poorly ventilated, unsanitary, and beset with plumbing problems.  Every court to consider similar conditions of confinement has recognized that the likely injuries from such conditions are objectively serious.

Plaintiffs also satisfy the second prong of *Farmer* because it is clear that Defendants have long known about these health and safety deficiencies and have been deliberately indifferent to them.  The County Commissioners have riveted their attention on building a new jail while neglecting their responsibilities to the existing facility. Indeed, for years the Commissioners have campaigned for a new jail by explaining how the present facility is deficient.  The Commissioners can hardly say that the facts set forth in this brief come as some surprise. *See Jones v. City and County of San Francisco*, 976

F. Supp. 896, 906 (N.D. Cal. 1997) (holding that county defendants "had actual and constructive knowledge of every significant deficiency" in the county jail given newspaper accounts, their own correspondence, and bond issues seeking a new jail, and thus prisoners had proven deliberate indifference). Here, too, deliberate indifference is demonstrated by the fact that officials "failed to act despite [their] knowledge of a substantial risk of serious harm." *See Farmer*, 511 U.S. at 842.

Indeed, Plaintiffs anticipate that in response to this motion for preliminary injunctive relief, Defendants will advise the Court that they have undertaken some efforts in recent weeks to improve conditions in the Jail. But while these efforts are commendable, they also demonstrate deliberate indifference. Every single one of these efforts could have--and should have--been commenced years ago. *See Armstrong v. Davis*, 275 F.3d at 864 (noting historic pattern of violations in upholding systemic relief in prison litigation); *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985) (same). In any event, Defendants efforts are too little and too late to avoid the need for preliminary injunctive relief to guarantee that, at long last, these five unconstitutional conditions of confinement will be eradicated.

### 3. The Balance of Potential Harm Favors Plaintiffs

Plaintiffs seek an order requiring Defendants to comply with their obligations under the Constitution, and no more than that. Without that order, Plaintiffs will suffer irreparable injury. Defendants should *already* be operating the Canyon County Jail in a manner consistent with the Eighth Amendment. Therefore, ordering Defendants to perform tasks that they should already be performing will cause them no cognizable harm.

To be sure, it may cost taxpayers tens of thousands of dollars to bring the Canyon County Jail into constitutional compliance, but this is a cost required by the Constitution. "[C]osts cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards." *Wright v. Rushen*, 642 F.2d 1129, 1134 (9th Cir. 1981). *See also Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979) ("The cost or inconvenience of providing adequate [recreation] facilities is not a defense to the imposition of a cruel punishment."); *Alberti v. Sheriff of Harris County, Tex.*, 937 F.2d 984, 999 (5th Cir. 1991) ("[I]nadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement.")

In fashioning an appropriate remedy, county officials may of course choose less expensive options provided that the results are effective, but they must not delay or ignore needed improvements merely because of the required cost. *Wright*, 642 F.2d at 1134. We may sympathize with Canyon County's financial concerns, but "[t]his Court rejects the notion that citizens of the greatest democracy in the world cannot 'afford' to construct a jail that complies with minimum requirements of the Eighth Amendment to the United States Constitution to prevent cruel and unusual punishment. *See Battle v. Anderson*, 594 F.2d 786, 792 (10th Cir. 1979). *See also Miller v. Carson*, 563 F.2d 741, 748 (5th Cir. 1977)." *Loya*, 1992 WL 176131 at *4. *See also Hamilton v. Love*, 358 F. Supp. 338, 343 (E.D. Ark. 1973) (holding that the lack of financial resources "can never be an adequate justification" for failing to provide recreation equipment for pretrial detainees).

4. **The Public Interest Favors the Granting of Relief**

There is a strong public interest in requiring that Canyon County provide its prisoners with constitutionally adequate conditions of confinement. *See Toussaint v. Rushen*, 553 F. Supp. 1365, 1378 (N.D. Cal. 1983), *aff'd*, 722 F.2d F.2d 1490 (9th Cir. 1984) (granting preliminary injunction in prisoner's rights case, finding that the eradication of unconstitutional conditions of confinement is in the public interest). *See also Cohen v. Coahoma County, Miss.*, 805 F. Supp. 398, 408 (N.D. Miss. 1992) (acknowledging a strong public interest "in the vindication of constitutional rights and the proper and lawful administration of the jail"). Canyon County has *no* legitimate interest in operating a penal facility that violates constitutional minima. Accordingly, Plaintiffs are entitled to a preliminary injunction on all five constitutional claims.

REMEDY

Once a constitutional violation has been identified in prisoner litigation, the Court's function is to fashion a remedy "'that does no more and no less than correct that particular constitutional violation.' *Balla*, 595 F. Supp. at 1563, quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)." *Loya*, 1992 WL 176131 at *1. *See also* PLRA, 18 U.S.C. §3626(a)(2) (requiring that preliminary injunctive relief "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means to correct that harm.")

Given that all five constitutional violations occurring here--overcrowding, inadequate ventilation, inadequate sanitation, inadequate plumbing, and inadequate recreation--are the product of *systemic* failures in policies or practices, Plaintiffs are entitled to systemic relief, the same type of relief granted in *Balla* and *Loya*. *See also*

*Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001), *cert. denied*, 537 U.S. 852 (2002) ("System-wide relief is required if the injury is the result of violations of a statute or the constitution that are attributable to policies or practices pervading the whole system (even though injuring a relatively small number of plaintiffs)."); *Hoptowit v. Ray, 682 F.2d 1287 (9th Cir. 1982).*

The Supreme Court has emphasized that "'strong considerations of comity . . . require giving the States the first opportunity to correct the errors made in the internal administration of their prisons.' *Preiser v. Rodriguez,* 411 U.S. 475, 492 (1973)." <u>Lewis v. Casey</u>, 518 U.S. 343, 362 (1996). Accordingly, Plaintiffs recommend that this Court do precisely what Magistrate Williams did in *Loya*: give the defendants deadlines by which to submit to the Court an effective remedial plan to cure each constitutional violation. *See Loya*, 1992 WL 176131 at *5.

Clearly, it will be incumbent on the county to hire correctional and/or environmental experts to inspect the Canyon County Jail and offer recommendations as to curing its deficiencies in these five areas. *See, e.g., Loya*, 1992 WL 176131 at *5 (giving Bannock County thirty days "in which to obtain electrical and plumbing inspections and to provide a written report to the Court detailing the necessary repairs.") *See also Martino v. Carey*, 563 F. Supp. at 1006 (ordering county officials to submit "within thirty days of the date of this opinion, a plan for alleviating" unconstitutional conditions of confinement).

What Sheriff Smith and Captain Hansen told the County Commissioners on October 20, 2008 will likely prove to be correct: the Canyon County Jail needs "a large scale renovation." (*See* Exhibit 1 at 2.) Entire systems will likely need to be refurbished,

including the ventilation system and much of the plumbing.  Moreover, the population of the Jail must be capped at a tolerable level, adequate space must be set aside for indoor recreation with exercise equipment, and all prisoners (including those in segregation) must be afforded an opportunity for reasonable outdoor exercise.  Mold must be eradicated, and proper sanitation ensured.

Defendants, then, should be ordered to submit a remedial plan.  Plaintiffs should then be given an opportunity to comment on the plan's likely effectiveness, but the Court should give deference to any reasonable proposal submitted by Defendants. *See Lewis v. Casey*, 518 U.S. at 362. *See also Skinner v. Uphoff*, 234 F. Supp.2d 1208, 1217-18 (D. Wyo. 2002) (ordering prison officials to submit a remedial plan and suggesting that they consult with counsel for the plaintiff class "so that, if possible, a joint proposed Remedial Plan may be submitted").  But without question, Defendants cannot be expected to devise an effective remedial plan unless they first have the Jail thoroughly inspected.  As Captain Hansen stated in his letter to the Commissioners, as a first step there should be "[a] complete facility appraisal and recommendation of the work needed to develop a complete renovation plan with a time frame done by an outside contractor."

## CONCLUSION

Captain Hansen ended his letter to the Commissioners (Exhibit 1) with the same language that Plaintiffs now wish to borrow as their concluding remarks: "We must recognize that the Dale G. Haile Detention Center is in poor condition.  Employees, visitors and inmates who are all Canyon County Citizens are affected by this.  It is a matter of liability, responsibility, accountability and Canyon County pride that these facility issues be immediately corrected."

Dated this 27th day of March, 2009.

Stephen L. Pevar
Lea C. Cooper
Dean J. Miller

Attorneys for the Plaintiffs