

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMANDA DAVIS, et al,<br><br>Plaintiffs,<br><br>vs.<br><br>CANYON COUNTY, IDAHO, et al,<br><br>Defendants. | Case No. 1:09-cv-00107-BLW<br><br>CONSENT DECREE,<br>ORDER AND JUDGMENT |

The Court has reviewed and considered the Consent Decree, Order and Judgment entered into by the parties and is of the opinion that it is a fair and reasonable resolution of the issues pending between them. Based thereon, the Court hereby approves the proposed Consent Decree and directs the entry of the Order and Judgment as follows.

## I.
## PRELIMINARY STATEMENT

1. The parties to this agreement stipulate that this Court has jurisdiction over the parties and subject matter of this action.

2. This class action was initiated by six named Plaintiffs: Amanda Davis, Alisha Baker, Troy Fenster, Desiree Comingo, Parnell Williams, and Pedro Martin on their own behalf and on behalf of all other persons similarly situated, and was brought against Canyon County, Idaho, the Board of County Commissioners of Canyon County, Idaho (the "Board"), and Chris Smith, the Sherriff of Canyon County, Idaho (the "Sheriff"). These Defendants shall be collectively referred to herein as "the County."

3. This action seeks declaratory and injunctive relief relating to conditions of confinement for prisoners held in the Canyon County Jail.

4. The agreement of the parties and these provisions are not to be construed as establishing or modifying any standard of civil or criminal liability of any official, employee, agent or representative of the County, other than for the sole and limited purpose of this Consent Decree, Order and Judgment.

5. The parties hereto agree that with the exception of the issue of attorney fees and costs, which the parties agree they will attempt to resolve in a separate agreement between them, this Consent Decree, Order and Judgment fully resolves all issues raised in the Complaint by the named Plaintiffs and the class they represent. The parties further agree that this action my be dismissed with prejudice pursuant to Rule 23(e) and 41(a)(2), Federal Rules of Civil Procedure, subject to the agreements set forth herein.

6. Unless otherwise agreed herein, all terms, conditions, and agreements set forth in this Consent Decree, Order and Judgment that do not obligate the County to physically alter, construct, or make installations in the existing facility are to be implemented within thirty (30) days from the date on which the Court enters final approval of this Consent Decree, Order and Judgment. Unless otherwise agreed to herein, all terms, conditions or agreements set forth herein that obligate the Defendants to physically alter, construct, or make installations in any part of the existing facility, such as improvements to and/or maintenance of the ventilation system, shall be initiated with all deliberate speed. Moreover, they shall be completed within sixty (60) days from the date on which the Court preliminarily approves this Consent Decree, Order and

Judgment unless the contractor is unable to complete the process within that period of time and the County notifies counsel for Plaintiffs at least 10 days prior to the deadline and sets forth legitimate reasons for the delay.

7. This Consent Decree, Order and Judgment shall be ongoing in nature and shall continue in full force and effect. All parties to this agreement recognize and submit to the continuing jurisdiction of this Court for the limited purpose of carrying out the intent of this Consent Decree, Order and Judgment.

8. This Consent Decree, Order and Judgment shall remain in effect for a minimum of two years from the date of approval hereof by the Court. Thereafter, this Consent Decree, Order and Judgment is susceptible to being terminated pursuant to 18 U.S.C. § 3626(b) of the Prison Litigation Reform Act (PLRA).

9. The following sections of this Consent Decree, Order and Judgment address specific issues raised by Plaintiffs in this action relating to alleged deficient conditions of confinement in the Canyon County Jail and the resolution of these issues. The parties stipulate that the terms of this Consent Decree, Order and Judgment extend no further than necessary to satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A).

10. Neither the fact of this Consent Decree, Order and Judgment or any statements contained herein may be used in any other case or administrative proceeding, except that the County and its employees may use this Consent Decree, Order and Judgment to assert issue and/or claim preclusion and to preserve the jurisdiction of this Court in other litigation.

11. Plaintiffs' action alleges unconstitutional conditions in the jail relating to (1) overcrowding; (2) inadequate ventilation, sanitation, plumbing, temperature control,

bedding, recreation, staffing, fire protection, medical care, and training and supervision of jail staff; (3) failure to ensure the provision of special meals for prisoners with food allergies; (4) arbitrary rule enforcement; (5) and sex discrimination against female prisoner workers.

12. The parties hereto have reached agreement on each of these issues as set forth below.

## II.
## HISTORY OF THE CANYON COUNTY JAIL

13. The Canyon County Jail consists of three buildings: the Dale G. Haile Detention Center ("DHDC"), the Annex, and the Work Release Center. Plaintiffs have not asserted any issues with regard to the conditions of the Work Release Center.

14. The County constructed the Annex in the 1940s, which then served as the main jail. Following litigation in the 1980s over the Annex, the County built the DHDC, which opened in 1993, and closed the Annex because of its disrepair. In 1999, the Annex re-opened after it was refurbished. In 2006, the County partially closed the Annex and made additional substantial improvements to it.

15. The Annex consists of four levels. The top three levels house prisoners and are designated Annex 2, Annex 3, and Annex 4.

16. The optimum prisoner capacity of the DHDC as originally built in 1993 was 255. However, by approximately 1997, the DHDC began exceeding its optimum capacity. As a result, programming space was removed from the DHDC in order to put in additional bunks. As prisoners continued to flow into the DHDC and Annex, triple bunks were installed in the DHDC.

17. The DHDC consists of two floors and has 13 housing units for prisoners. Pods H, J, K, and L house female prisoners. Pods A, B, C, D, E, F, G, H, M, and N house male prisoners.

18. Under the Idaho Sheriffs' Association jail standards, jails can functionally house one inmate per 70 square feet. Optimum capacity is approximately 80% of functional capacity. The DHDC currently has a functional operational capacity of 296 inmates, and optimum capacity of 255. The Annex currently has a functional and optimum operational capacity of 62.

19. According to Defendants' records, from January 1, 2009 to present, the DHDC had an average of 307 prisoners per day. In the month of May 2009, the DHDC had an average of 283 prisoners per day. The Annex averaged 48 prisoners per day in 2008 and 52 in 2009, well within its optimum capacity. In 2007, the DHDC peaked at a one day high of 490 prisoners.

### III.
### OVERCROWDING

20. The functional capacity of the DHDC, the Annex, and each of the individual living units within those facilities is as follows:

| | |
|---|---|
| Pod 1, Unit A | 12 inmates |
| Pod 1, Unit B | 22 inmates |
| Pod 1, Unit C | 22 inmates |
| Pod 1, Unit D | 10 inmates |
| Pod 2, Unit E | 16 inmates |
| Pod 2, Unit F | 36 inmates |
| Pod 2, Unit G | 66 inmates |
| Pod 3, Unit H | 12 inmates |
| Pod 3, Unit J | 5 inmates |
| Pod 3, Unit K | 12 inmates |
| Pod 3, Unit L | 23 inmates |
| Pod 4, Unit M | 30 inmates |
| Pod 4, Unit N | 30 inmates |

|          |            |
|----------|------------|
| Annex 2  | 14 inmates |
| Annex 3  | 20 inmates |
| Annex 4  | 28 inmates |

21. Plaintiffs acknowledge that the Defendants may be unable at times to prevent the population of the jail from exceeding its functional capacity. While the County, through the Sheriff, is able to directly affect the population through decisions to book and release an arrestee or to cite and release him or her, the inmate population is also affected by factors beyond the County's control, including by reason of bonding and sentencing decisions of the courts and arrest decisions of other law enforcement agencies which are authorized to place arrestees in the jail. Such occurrences in which the functional capacity of the jail is exceeded, however, should be rare because the Defendants will strive to maintain enough open beds to accommodate the number of new admissions reasonably expected. For instance, the County must ensure enough empty beds by noon each Friday to accommodate the usual weekend surge in population. The County acknowledges that it has several options to control the jail's population, including its discretion to book and release an arrestee, to cite and release an arrestee, or to transfer prisoners to other facilities. However, the County does not have authority to compel arrest decisions by other agencies, *i.e.* city police departments and the state police, but it has entered into a Memorandum of Understanding with other agencies authorized to place arrestees in the jail in which the agencies acknowledge that they will also minimize bookings into the jail through utilization of book and release and cite and release procedures. The County is expected to enter into contracts with neighboring facilities to accommodate Canyon County prisoners when necessary to maintain compliance with the population cap.

22. The Canyon County Sheriff's Office is undertaking a pre-trial services program, which will provide information to the Canyon County Prosecuting Attorney's Office and the courts for the purpose of setting appropriate bonds for individual prisoners held in the Jail. This program is anticipated to assist in lowering the number of prisoners held in the Jail. However, the County understands that even if this program is not implemented and utilized, or is not as successful as anticipated, the County will still abide by the population caps, and will rely on other options to maintain compliance.

23. The County agrees that it will set and maintain the prisoner population of each housing unit of the DHDC and Annex at or below the level that complies with square footage per prisoner recommendations set forth in the Idaho Sheriff's Association's (ISA's) Minimum Standards For Detention Facilities. It is the intent of the County that it will be a rare occurrence in which the functional capacity of the jail is exceeded. However, if due to circumstances beyond the County's control, the population of any unit (or of the jail) exceeds its cap, the population will be reduced within 48 hours consistent with the cap. There are no exceptions for weekends. Any bunk beds currently existing in the DHDC or Annex that exceed the number of prisoners allowed by this Consent Decree in that housing unit will be removed within 90 days from the date this decree is preliminarily approved by the Court. Moreover, the holding time in an intake holding cell in the DHDC for any prisoner will not exceed eight hours unless said holding cell provides each prisoner in the cell with at least 70 square feet of living space, is fitted with a toilet, sink with hot and cold water as recommended by ISA standards.

24. The County agrees that in an effort to comply with the prisoner population cap, the Sheriff shall utilize incarceration alternatives as allowed by law for those prisoners committed to his care and custody based upon a classification system as required by Idaho Code § 20-602, including sheriff inmate labor detail, day reporting, house arrest, GPS monitoring, work release and/or housing of prisoners in other facilities. The parties agree that if the County cannot maintain compliance with the population cap despite its best efforts and utilization of these alternatives, one of the parties may request the issuance of a prisoner release order pursuant to 18 U.S.C. § 3626(a)(3). If a prisoner release order is entered, Plaintiffs shall be entitled to an award of reasonable attorneys fees incurred by them relating to the proceedings for issuance of the order.

### IV.
### VENTILATION

25. The County agrees to have the ventilation system, including the ducts, vents, ceiling grates, and applicable areas above the ceiling grates, in the Canyon County Jail tested, inspected, evaluated, cleaned and repaired by competent HVAC professionals. These professionals will determine whether the HVAC system is operating sufficiently to provide adequate heating, air conditioning, and ventilation to prevent the accumulation of humidity, odors, smoke, dust, carbon dioxide and other contaminants. The inspection shall include a check for mold in the ducts, vents, and above ceiling grates.

26. In the event that such inspection reveals material deficiencies that inhibit the proper operation of the ventilation system, the County will have the deficiencies promptly corrected by competently trained personnel or professionals.

27. The County shall have the HVAC system in the DHDC and Annex inspected by HVAC professionals on a quarterly basis and shall perform such maintenance as necessary to maintain the system in proper functioning order.

28. The County shall have all vents and ducts cleaned by a professional service and such work shall be completed within sixty (60) days from the date the Court preliminarily approves this decree.

29. The County shall maintain a log/file of all inspections and work performed on the HVAC system, including the changes of filters in the system.

## V.
## SANITATION

30. The County shall comply with and follow established jail policy and procedures for cleaning of living units, including providing cleaning supplies to prisoners for cleaning the units. See attached Exhibit "A." A log of cleaning activities shall be maintained and a checklist of cleaning requirements shall be developed and maintained.

31. The County shall perform routine maintenance on the drains in the living units to insure proper drainage and will repair or unplug an inadequately performing drain within 48 hours. The County shall maintain a log of all drain maintenance.

32. The County shall develop and implement procedures for razors to be collected and disposed on a daily basis so that razors are not re-used or re-distributed for use by prisoners.

33. The County shall implement procedures to ensure that washing machines are operated consistent with manufacturer's instructions and are not overloaded with clothing and bedding, thereby preventing these items from being properly cleaned and

dried. All prisoner laundry workers will be trained in the proper operation of washers and dryers.

34. The County shall regularly conduct inspections for deteriorated clothing and blankets and will repair or replace those that are in such condition that they do not provide prisoners with privacy or protect them from the cold.

35. The County will sanitize each mattress between each use by a different prisoner. Cracked mattresses in which the inner stuffing is visible and cannot be repaired shall be discarded.

36. Shower curtains will be cleaned periodically and kept free of mold. These curtains shall be long enough to restrict the spray of water outside of the showers.

## VI.
## PLUMBING

37. The County will perform weekly checks of the faucets, sinks, toilets and showers to determine whether they are functioning properly and report to maintenance any apparent problems. There shall be one functioning sink with hot and cold water for every 15 prisoners or fraction thereof in each living unit. See Idaho Jail Standards 18.50.

38. Reported problems with plumbing fixtures must be addressed and fixed within 48 hours, unless the repair requires parts or services that have been ordered but not yet available or unless there is at least one shower or sink for every 15 prisoners in that living unit. See Idaho Jail Standards 18.50.

39. Defendants will ensure that the temperature of the water leaving shower heads and sink faucets is always within the range of 100 to 106 degrees F. At least one shower and one sink per housing unit will be tested once every two weeks at

approximately 0700, 1400, and 2100 hours, and the results documented in a separate log. In addition, if a prisoner reports that the water temperature is too hot or too cold in a particular shower or sink, the temperature will be tested in that shower or sink within 24 hours at approximately the same time of day that the prisoner had used it. Shower curtains will be cleaned periodically and kept free of mold. These curtains shall be long enough to restrict the spray of water outside of the showers. .

40. The County will implement a new work order system to electronically track completion of work requests.

## VII.
## TEMPERATURE

41. Air temperature in all housing units in the DHDC and Annex shall be maintained within the range of 65 to 80 degrees F.

42. The County will develop and implement procedures to measure and log temperatures in each living unit at least two times per day and will repair each HVAC unit that is unable to maintain temperatures within the range noted above.

## VII.
## BEDDING

43. Every prisoner will be given two blankets at intake. Prisoners will only be provided more than two blankets if the medical department determines they have a medical need for additional blankets.

## IX.
## OUTDOOR RECREATION

44. The County shall make outdoor recreation available to each prisoner, except as noted below, for one hour each day. The County will allow prisoners to run, jog or engage in calisthenics in the outdoor recreation area. The scheduled outdoor

recreation times will be posted in each living unit. During colder weather, the County will make available a sufficient number of clean and usable coats so that all prisoners who choose to go outdoors will have one.

45. Prisoners may be refused access to outdoor recreation if inclement weather (such as rain or snow) prohibits the use of outdoor facilities or a natural disaster or jail lockdown or other emergency occurs. In addition, a particular prisoner may be denied outdoor recreation due to medical or disciplinary restrictions or where providing such access to that prisoner presents a real and immediate danger to the prisoner, other prisoners, staff, or public safety. However, the County will not deny equal access to outdoor recreation to persons in segregation merely because they are in segregation.

46. The County will maintain a log of outdoor recreation periods that will include the time the recreation was offered and the number of prisoners who participated in it. Recreation must be scheduled such that no one housing unit is scheduled to go outdoors during the same portion of the day every day; to illustrate, G-Unit will be offered recreation in the morning on some days of the week and in the afternoon on other days of the same week. Inmate workers may have to be offered recreation at the same time each day due to the nature of their work.

## X.
## STAFFING

47. The County agrees that it will maintain staff levels to accommodate all terms of this Consent Decree.

48. The County agrees to train and instruct detention officers to provide equitable and consistent application of policies and procedures in the Canyon County Jail.

## XI.
## RULE ENFORCEMENT

49. The County agrees to physically post the Inmate Handbook, including grievance procedures, in each living unit so that it is accessible for prisoners to review. Staff will enforce these rules fairly and appropriately.

## XII.
## SPECIAL MEALS

50. The County agrees that if a prisoner claims a food allergy, he/she will receive a special diet free of the food claimed to cause the allergic reaction unless the claimed allergy is proven to be medically unfounded. The County may require any prisoner claiming such an allergy to sign a medical release so that proof of such medical condition may be obtained. The prisoner has the responsibility to provide the County with names and contact information of persons, including medical care providers and family, who can confirm the claimed allergy. If no medical records are available, the Jail may require that the prisoner permit blood testing if the allergy is one that can be proven through such analysis. The County may also contact members of the prisoner's immediate family to confirm the existence of the claimed allergy.

51. The County agrees that its food services will maintain an active list of all prisoners who are authorized to receive special diets and will implement procedures so that any food that would cause an allergic reaction will not be delivered to the prisoner.

## XII.
## MEDICAL CARE

52. The County agrees that it will reduce the co-payment charged to prisoners for visits with a nurse or doctor from $10.00 to $5.00. As stated in the current Inmate

Handbook, this charge will only be incurred for visits with medical staff and not when the medical office responds to a prisoner's medical request.

## XIV.
## SEX DISCRIMINATION

53. The parties recognize that the County does not have a separate facility for female work release prisoners analogous to the facility for male work release prisoners, and that as a result, female work release prisoners must be housed in the DHDC and/or Annex with general population prisoners. This results in an inequality of the benefits of work release between the male and female prisoners. Consequently, the County agrees to provide female work release prisoners with certain benefits not available to their male counterparts.

54. There are no female work release prisoners in the DHDC or the ANNEX at the present time, and the Sheriff does not intend to hold such prisoners in these facilities. The County recognizes its continuing obligation to provide female work release prisoners with comparable treatment as enjoyed by male work release prisoners.

55. The County recognizes its continuing obligation to appoint female inmate worker prisoners in the same approximate proportion as male inmate worker prisoners.

## XV.
## REMEDIATION

56. The County agrees to continue the renovation currently occurring of all housing units in DHDC except for the holding cells. This remediation consists of blasting where necessary the walls and ceilings of each unit with dry ice pellets to remove mold, and ensuring the proper and healthy removal of mold and mold spores

during this process. These treated areas are then repainted with mold-resistant paint and stainless steel panels are placed in shower stalls. Remediation of all housing units shall be completed by April 30, 2010. The County agrees to use its best efforts to complete the work prior to that deadline. The renovation work will proceed in the following order for the living units: C, G, F, E, L, K, H, J, M and N.

57. The County agrees to maintain the fire alarm system in DHDC and the Annex in proper working order consistent with manufacturer's recommendations and state and local fire codes.

## XVI.
## IMPLEMENTATION AND ENFORCEMENT

58. This Consent Decree, Order and Judgment is binding upon the parties hereto and, in the event that any provision causes a result unintended by the parties, or causes an ambiguous interpretation, the aggrieved party shall notify the other party in writing of the unintended result or ambiguous interpretation. Such written notification shall include a statement of facts sufficient to identify the unintended result or ambiguous interpretation. Upon receipt of said written notice, the parties shall have 20 days to make a good faith effort to negotiate a settlement of the problem. If the parties are unable to reach an agreement within 20 days, the issue may then be submitted to the Court.

59. The parties agree that in the event of a dispute between them regarding the terms and conditions of this Consent Decree, they will provide written notice to the other of the alleged dispute, including a statement of facts sufficient to identify their dispute and make it possible for them to attempt to resolve the matter through negotiation. In

the event that they are unable to resolve the matter within 20 days, each party has the option of seeking the Court's assistance to resolve the issue.

60. No action may be brought by either party to enforce this Consent Decree until 20 days after written notification of recognition of an unintended result, an ambiguous interpretation, or a dispute regarding the terms, conditions of or compliance with this Consent Decree, Order and Judgment. The parties agree to exhaust these administrative remedies prior to requesting assistance from the Court and the parties expressly agree that neither shall be entitled to attorney fees or costs if they fail to negotiate and/or exhaust these administrative remedies prior to seeking the Court's assistance. The sole exception to the 20-day notice provision is that in cases of emergency involving immediate health and safety issues, the 20-day provision is reduced to 5 days after notice is sent to the other party and a good faith effort is made by the party sending notice to resolve the issue during that time.

61. It is expressly understood and agreed by the parties hereto that the object of this Consent Decree, Order and Judgment is to obtain compliance herewith, and the County expressly agrees to provide adequate funding to assure compliance with the provisions set forth herein.

62. In the event that the County learns that any portion of this Consent Decree, Order and Judgment is totally impossible to implement or impossible to implement within the time allowed, the County shall notify Plaintiffs' counsel as soon as the County becomes aware of such impossibility and shall include in such notification the following:

    a. The precise provision of this Consent Decree, Order and Judgment that it cannot fulfill.

b. The reason why said fulfillment cannot take place or cannot take place on time.

c. A statement of an alternative plan to satisfy the requirements of the provision, if possible.

d. An estimate of the time necessary to fully satisfy the requirements of the referenced provision.

e. If it is contended that any such provision cannot, under any circumstances, be fully satisfied, an explanation of the reason why full satisfaction is impossible.

f. Upon receipt of such notification, the parties will attempt to resolve such issues in accordance with the negotiation process set forth previously herein. In the event they are unable to resolve the issue within 20 days, the issue may be submitted to the Court for resolution.

63. The parties agree they are obligated to attempt to resolve issues involving proposed modifications of this Consent Decree, Order and Judgment through use of the dispute resolution procedure set forth in this "Implementation and Enforcement" provision.

## XVI.
## VERIFICATION AND INSPECTIONS

64. The parties have selected Lawrence Richards to serve as the compliance monitor relating to the terms of this Consent Decree, Order and Judgment. The costs of the monitor shall be borne by the County.

65. The parties agree that an inspection of the existing Canyon County Jail will be conducted by the monitor approximately every six months after the effective date

of this Consent Decree, Order and Judgment to verify compliance with the agreements set forth herein, or more frequently if the Monitor deems it necessary. After the first two inspections, the Monitor may skip the third inspection if this is deemed reasonable but must conduct the fourth inspection prior to the end of the second year of operation of this Consent Decree. Following each inspection, the Monitor will issue a report to the parties summarizing the findings and conclusions regarding compliance with the terms and conditions of the decree.

66. In the event that either of the parties desires verification of any information pertinent to this Consent Decree, Order and Judgment, counsel for the parties agree to attempt to develop the necessary information, and if necessary, to select an expert or other qualified individual who shall be permitted to make the necessary inspections and provide the parties and the Court with information necessary to resolve any questions relevant to this Consent Decree, Order and Judgment. It is understood by the County that counsel for the Plaintiff class have a need to conduct reasonable monitoring of this Consent Decree to ensure continued compliance. Therefore, Defendants must timely produce such documents and answer such questions as reasonably requested by Plaintiffs' counsel, at no cost to Plaintiffs. (If at any time Defendants believe that Plaintiffs' requests are unreasonable or unnecessary, Defendants will follow the process outlined above in an effort to resolve the dispute.)

DATED this 12th day of November, 2009.

_____
Hon. B. Lynn Winmill
U.S. District Court for the District of Idaho

DATED this __4__ day of __August__, 2009.

CANYON COUNTY
BOARD OF COUNTY COMMISSIONERS

_/s/ David J. Ferdinand_
David J. Ferdinand, II, Chairman

_/s/ Steven J. Rule_
Steven J. Rule, Member

_/s/ Kathryn Alder_
Kathryn Alder, Member

ATTEST: WILLIAM H. HURST, CLERK

By: _/s/_ Deputy
Deputy Clerk

CANYON COUNTY SHERIFF

_/s/ Chris Smith_
Chris Smith

DATED this ____ day of _____, 2009.

AMERICAN CIVIL LIBERTIES UNION

_/s/ Stephen L. Pevar_
Stephen L. Pevar

_/s/ Lea C. Cooper_
Lea C. Cooper
Joseph Miller

Counsel for the Plaintiff Class

# CHAPTER 9: Facility Cleaning and Maintenance

It is the policy of Canyon County Sheriff's Office to provide a clean, sanitary, and operational facility.

## 9.01 Cleaning

Mops and cleaning equipment shall be provided for each housing unit daily. All cleaning supplies shall be accounted for at the beginning of each shift and after use. All cleaning supplies shall be secured in a locked storage area when not in use.

Kitchen counters, floors and other work areas shall be cleaned daily at a time acceptable to food service personnel. The housing deputy shall make daily inspections of assigned housing units to ensure cleanliness. If the housing deputy feels that the area is not clean, the housing deputy shall assign further cleanup duties to the inmates. Deputies will oversee and facilitate the cleaning of the units by inmates. Inmate workers shall mop and clean daily all hallways, booking area, holding area and all other inner perimeter rooms or areas.

The deputy stations, the area behind the booking counter, and office areas are the responsibility of the deputy. Inmates are not allowed in these areas to clean. Cleaning supplies will be provided.

## 9.02 Maintenance

Maintenance and repair is the responsibility of the Canyon County Maintenance Department.

Deputies shall note any maintenance requirement on a maintenance request form. This form shall be forwarded to maintenance (yellow and white copy) with the pink copy being placed in the Admin mailbox in booking.

Items that are deemed as a maintenance emergency can be requested by the shift supervisor, who may contact the on-call maintenance person if necessary.

33

EXHIBIT A